**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013

Title: YEOTA CHRISTIE V. THE BANK OF NEW YORK MELLON, ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

Julie Barrera                                    N/A
Courtroom Clerk                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR
DEFENDANT:

    None Present                                None Present

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION TO CANCEL THE
ASSIGNMENT OF THE DEED OF TRUST**

Defendants Bank of New York Mellon, N.A. ("BNYM"), Bank of America, N.A.
("BoA"), BAC Home Loans Servicing LP ("BAC"), and ReconTrust Company, N.A.
("RTC") (together, "Defendants") move to dismiss (Dkt. 17) Plaintiff Yeota Christie's
("Plaintiff's") First Amended Complaint (Dkt. 13). Plaintiff moves to cancel the
assignment of her deed of trust (Dkt. 14). After reviewing the motions, oppositions, and
replies, the Court herby GRANTS Defendants' motion and DENIES Plaintiff's motion.[1]

## I.    Background

The facts alleged by Plaintiff are as follows:

In November 2006, Plaintiff executed a promissory note ("the Note") and deed of
trust ("the DOT") in favor of BondCorp secured by the subject property located in Ladera
Ranch, California. FAC (Dkt. 13) ¶ 17. The Note had an allonge attached that transferred

---

[1] The Court finds the matter appropriate for decision without oral argument.  Fed R. Civ. P. 78; L. R. 7-
15.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                Date: August 27, 2013
                                                                                     Page 2

---

payments due under the Note to Countrywide Bank, N.A., who in turn transferred the
payments to Countrywide Home Loans, Inc.[2] *Id*. Plaintiff disputes the authenticity and
authority of the endorsements on the allonge. Mot. to Cancel Assignment of the Deed at
4. Shortly after the origination of her loan, BondCorp, Countrywide Bank, N.A., and/or
Countrywide Home Loans, Inc. sold Plaintiff's loan to an unknown entity. FAC ¶ 18.
This unknown entity, with Defendants, sought to securitize Plaintiff's loan into the
CWALT Mortgage Pass-through Certificates CWALT 2007-OA3 Trust ("CWALT
Trust"). *Id*. ¶ 19. These entities improperly securitized Plaintiff's loan. *Id*. Specifically,
Plaintiff's loan was not assigned to the CWALT Trust before the March 1, 2007, Closing
Date. *Id*. ¶ 22.  Plaintiff's loan was purportedly assigned to the CWALT Trust in
September 2011. Mot. to Cancel Assignment of Deed at 3. This directly violates the
Pooling and Servicing Agreement ("PSA"), which governs the formation of the CWALT
Trust. FAC ¶ 22.

        In January 2009, Plaintiff sought to modify her loan to make the monthly
payments more manageable. FAC ¶ 33. At that time, Plaintiff had already submitted a
loan modification package with all of the financial information requested by Defendants.
*Id*. ¶ 34. On January 7, 2009, Defendants claimed they had completed the recalculations
for her loan modification. *Id*. ¶ 35. In May 2009, Defendants stated that they were "way
behind" on Plaintiff's loan modification. *Id*. Defendants also informed her that she must
be at least 60 days behind on her payments to receive a loan modification. *Id*. She was
current on her loan at that point. *Id*. For the next nine months, Plaintiff continued to seek
modification of her loan. *Id*. ¶ 37.

        In July 2011, Plaintiff received a letter from BoA wherein BoA represented itself
to be a debt collector and servicer of the loan. *Id*. ¶ 39. The letter indicated that BNYM
was the creditor. *Id*. On July 27, 2011, Plaintiff responded to the letter, requesting an
accounting of the debt and disputing the monthly payments, delinquencies, and the debt
generally. *Id*. ¶ 40.

        In September 2011, Defendants recorded an assignment of the DOT to BNYM as
trustee for the CWALT Trust. *Id*.  ¶ 24. The document is signed by Kathy Oriard
("Oriard"), the assistant secretary of Mortgage Electronic Registration Systems, Inc.
("MERS"). *Id*. Plaintiff believes Oriard is an employee of BoA. *Id*.

---

[2] BoA is the successor in interest to Countrywide Home Loans, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                                      Page 3

---

In February 2011, BoA filed its 10-K annual report ("the Annual Report") with the United States Securities and Exchange Commission. *Id*. ¶ 26. In the Annual Report, BoA stated, in relevant part: "In a number of cases, we do not hold, and may not be able to obtain the underlying security, loan or other obligation. This could cause us to forfeit the payments due to us under these contracts." FAC, Ex. Q at 105.

In March 2011, BoA stipulated to a consent order with the United States of America, Department of Treasury, Comptroller of the Currency ("OCC"). *Id*. ¶ 27. BoA entered into another consent order with the Board of Governors of the Federal Reserve System in April 2011. *Id*. ¶ 28. These consent orders found that BoA (a) filed untrue affidavits concerning, among other things, the proper ownership of mortgage notes; (b) filed improperly notarized mortgage documents; and (c) initiated foreclosure proceedings without ensuring that either the promissory note or mortgage document was properly endorsed or assigned. *Id*. ¶ 27.

In January 2012, Plaintiff received a Debt Validation Notice from RTC stating that it was a debt collector and that BoA was the creditor who owned the debt. *Id*. ¶ 43. A substitution of trustee was recorded establishing RTC as the trustee. *Id*. ¶ 44. On January 31, 2012, Plaintiff received a letter from BoA, as a debt collector, attempting to collect a debt on the Note. *Id*. ¶ 45. Plaintiff again disputed the monthly payments, delinquencies, and the debt generally. *Id*. ¶ 46. In February 2012, RTC responded, informing Plaintiff that BondCorp. was the creditor. *Id*. ¶ 47. In March 2012, BoA again contacted Plaintiff, indicating that it was a debt collector attempting to collect a debt. *Id*. ¶ 48.

Plaintiff does not dispute that she owes money on her mortgage obligation. *Id*. ¶ 53. Plaintiff only disputes whom she owes and in what amount. *Id*.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                       Page 4

---

at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  On a motion to dismiss, this court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) can not be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).  For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 5

---

properly subject to judicial notice.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).  Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires."  This policy is applied with "extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

## III.    Discussion

Defendants move to dismiss Plaintiff's First Amended Complaint on the grounds that (1) Plaintiff's claims are barred by res judicata; (2) Plaintiff does not have standing due to lack of tender; and (3) Plaintiff has pled insufficient facts to support each claim for relief. The Court will address each in turn. Because the Court agrees with Defendants on the third argument, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's first five causes of action and DISMISSES WITH PREJUDICE Plaintiff's Quiet Title Claim.

### a. Res Judicata

The doctrine of res judicata acts to prevent a party from re-litigating a matter "to the harassment and vexation of his opponent." *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998). The doctrine applies when: (1) the issues decided in the prior adjudication are identical to those presented in the later action; (2) there was a final judgment on the merits in the prior action; and (3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication. *Pollock v. University of Southern California*, 112 Cal. App. 4th 1416, 1427 (2003).

In April 2012, Plaintiff filed a lawsuit against Defendants BNYM, BoA, BAC, RTC, and MERS in the Superior Court of Orange County. RJN (Dkt. 18) Ex. 3.  Plaintiff filed a First Amended Complaint later in April, 2012. *Id*. Ex. 4.  Plaintiff alleged nine

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 6

---

causes of action: (1) Declaratory Relief; (2) Negligence; (3) Negligent Infliction of
Emotional Distress; (4) Unfair Debt Collection; (5) Unfair Business Practices; (6)
Accounting; (7) Cancellation of Written Instrument; (8) Quiet Title; and (9) Breach of the
Covenant of Good Faith and Fair Dealing. *Id*. Ex. 4. Defendants moved to dismiss
Plaintiff's actions. *Id*. Ex. 3. The state court sustained, granting Plaintiff twenty days to
amend. *Id*. Ex. 5. The parties subsequently stipulated to extend the amendment deadline.
*Id*. Ex. 6. Plaintiff did not timely amend. *Id*. Ex. 3. Defendants served Plaintiff with
notice of an ex parte application for dismissal with prejudice for failure to amend. *Id*. The
next day, Plaintiff moved to voluntarily dismiss her case. *Id*. Ex. 7. The clerk of the court
entered Plaintiff's request and rejected Defendants' ex parte application. *Id*. Ex. 3. That
same day, Plaintiff filed the present action in federal court against Defendants BNYM,
BoA, BAC, and RTC.[3] *See* Compl. (Dkt. 1). In her First Amended Complaint, Plaintiff
alleges six causes of action: (1) Declaratory Relief; (2) Negligence; (3) Unfair Debt
Collection; (4) Unfair Business Practices; (5) Cancellation of Written Instrument; and (6)
Quiet Title.[4] FAC (Dkt. 13) at 1.

Defendants contend that the three res judicata requirements have been met in this
case. MTD (Dkt. 17) at 5. The Court disagrees. There has not been a final judgment on
the merits.

Defendants rely on *Wells v. Marina City Properties*, a case in the Supreme Court
of California. 29 Cal. 3d 781 (1981). In that case, as here, the plaintiff moved to
voluntarily dismiss her case without prejudice the day after the defendant moved to
dismiss the case with prejudice for failure to timely amend. Unlike here, the trial court
dismissed the case with prejudice over the plaintiff's motion. The trial court subsequently
reconsidered and dismissed the case without prejudice. The appellate court reversed and
granted the defendant's motion. The Supreme Court of California affirmed and reinstated
the trial court's dismissal *with prejudice*. "Once a general demurrer is sustained with
leave to amend and plaintiff does not so amend within the time authorized by the court . .
. he can no longer voluntarily dismiss his action . . . even if the trial court has yet to enter
a judgment of dismissal on the sustained demurrer." *Id*. at 789.

---

[3] MERS is not a party to this action.
[4] Plaintiff has dropped her claims for Negligent Infliction of Emotional Distress, Accounting, and Breach
of the Covenant of Good Faith and Fair Dealing.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 7

---

Here, Defendants are correct in asserting that the state court appears to have improperly entered Plaintiff's voluntarily dismissal over Defendant's motion to dismiss with prejudice for failure to amend. However, this is a matter properly brought on appeal in state court, as it was in *Wells*. The *Rooker-Feldman* doctrine establishes that a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). A disappointed party in state court may only appeal to a higher state court or from the highest state court to the Supreme Court of the United States. *Id*. at 1155.

In *Rooker v. Fidelity Trust Co.*, the federal plaintiffs alleged that the state court had made errors in deciding their federal constitutional claims. 263 U.S. 413, 415 (1923). The plaintiffs sought to have the state court judgment declared null and void in federal district court because of these state court errors. *Id*. The Court held that reversal or modification of the state court judgment in federal district court would be an improper appeal and an exercise of jurisdiction held at the federal level only by the Supreme Court of the United States. *See id.* at 416. "The jurisdiction possessed by the District Courts is strictly original." *Id*. "If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication." *Id*. at 415.

Defendants acknowledge that the state court entered Plaintiff's voluntary dismissal without prejudice and denied Defendants' ex parte application for an entry of judgment with prejudice. MTD at 6. Defendants want this Court to correct the state court's mistake and treat the previous action as dismissed with prejudice. *See* MTD at 6-7. This Court does not have jurisdiction to make such a determination. If Defendant wishes to challenge the state court's entry of a voluntary dismissal without prejudice, Defendants must pursue a remedy in state court.

Voluntary dismissal without prejudice is not a final judgment for res judicata purposes. *See, e.g.*, *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995). Plaintiff's claims were previously voluntarily dismissed without prejudice. Thus, there has been no final judgment on the merits. The second requirement for res judicata is not met. Plaintiff's claims are not barred by res judicata.

**b. Tender Rule**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                Date: August 27, 2013
                                                  Page 8

---

In California, the so-called "tender rule" requires that, as a precondition to challenging a foreclosure sale, the borrower must make a valid and viable tender of payment of the debt. *See, e.g., Grant v. Aurora Loan Services, Inc.*, 736 F. Supp. 2d 1257, 1269 (C.D. Cal. 2010); *Montoya v. Countrywide Bank, F.S.B.*, No. C09–00641, 2009 WL 1813973, at * 11–12 (N.D. Cal. Sept. 10, 2010); *U.S. Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal. App. 3d 1214, 1222 (1985).

Courts are divided, however, as to whether the tender rule applies in situations where the foreclosure sale has not yet occurred, as in this case. *See Rodriguez v. Bank of America*, No. C11-3839-PSG, 2011 WL 5864108, at *3 (N.D. Cal. Nov. 22, 2011) ("There is some division in the district courts, however, as to whether the 'tender rule' precludes a claimant from seeking to prevent a pending nonjudicial foreclosure, as opposed to attempting to 'unwind' a foreclosure that has taken place."). *Compare Silva-Pearson v. BAC Home Loans Servicing, LP*, No. C 11-01491, SI 2011 WL 2633406, at *2 (N.D. Cal. July 5, 2011) (finding no basis for the tender rule where plaintiff challenges a pending foreclosure), *with Yazdanpanah v. Sacramento Valley Mortg. Group*, C 09-2024 SBA, 2009 WL 4573381, at *7 (N.D. Cal. Dec. 1, 2009) (holding that when "foreclosure is either pending or has taken place the debtor must allege a credible tender of the amount of the secure debt to maintain any cause of action for wrongful foreclosure").

This Court finds more persuasive the line of decisions in which courts have refused to extend the tender rule to cases where the foreclosure sale has not yet occurred. As this Court recently held, "applying the tender rule to pending foreclosures would prevent any examination of irregularities in the foreclosure process, thus immunizing even deliberate disregard for statutory requirements." *Tang v. Bank of America, N.A.*, No. SACV 11-2048 DOC (DTBx), 2012 WL 960373, at *6 (C.D. Cal. Mar. 19, 2012). California has created an "exhaustive" statutory framework containing a "myriad of rules" relating to proper notice and foreclosure procedures. *Moeller v. Lien*, 25 Cal. App. 4th 822, 834 (1994). Applying the tender rule to pending foreclosures as well as foreclosure sales would cripple those rules. Furthermore, when a foreclosure has not yet taken place, there is no concern about expending significant judicial resources unwinding a transfer of title to a bona fide purchaser. When the sale is still pending, postponing it imposes slight delay, ensures all legally required paperwork is in order, and still allows lenders to recover subject properties once they have shown proper documentation. *Tang*,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 9

───────────────────────────────────────────────────────────

2012 WL 960373, at *6.  On the basis of these policy considerations, the Court declines to apply the tender rule where, as here, a foreclosure sale has not yet taken place.

### c. Causes of Action

Defendants contend that Plaintiff has insufficiently pled each of her causes of action. The Court agrees. The Court will address each cause of action in turn.

### 1. Declaratory Relief

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), establishes: "In a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emphasis added). To satisfy the "actual controversy" requirement, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)). The controversy must be substantial and "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*.

Plaintiff contends that an actual controversy exists between the parties because Defendants have no legal interest in her loan and are not authorized to collect on it. To support this claim, Plaintiff makes five allegations: 1) Defendants failed to properly endorse and deliver the Note to each successive defendant pursuant to the California Commercial Code ("the Commercial Code"); 2) the MERS signatory was not an employee of MERS, but rather an employee of BoA; 3) Defendants failed to properly securitize her loan under the PSA; 4) BoA admitted in consent decrees with the OCC and the Board of Governors of the Federal Reserve System that it failed to follow proper procedures in securitizing Plaintiff's loan; and 5) BoA admitted in its Annual Report that it does not hold Plaintiff's underlying security.

The Court will address each of these allegations in turn.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                     Date: August 27, 2013
                                                        Page 10

---

### i. Endorsement and Delivery of the Note

The California Commercial Code contains endorsement and delivery requirements. *See* Sections 3202–3204. The California *Civil* Code does not contain such requirements.

The California Civil Code governs the nonjudicial foreclosure process. *See, e.g.*, *In re Cedano*, 470 B.R. 522, 530 (B.A.P. 9th Cir. 2012); *Castaneda v. Saxon Mortg. Services, Inc.*, 687 F. Supp. 2d 1191, 1201 (E.D. Cal. 2009); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1047 (E.D. Cal. 2009). Although the Commercial Code generally governs negotiable instruments, *Padayachi v. IndyMac Bank*, 2010 WL 4367221, at *3 (N.D. Cal. Oct. 28, 2010), "[t]he comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive." *Geren v. Deutsche Bank Nat.*, No. CV 11-0938 LJO GSA, 2011 WL 3568913, at *7 (E.D. Cal. Aug. 12, 2011) (quoting *Moeller v. Lien*, Cal. App.4th 822, 834 (1994)). "Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute." *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp.2d 1092, 1098 (E.D. Cal. 2010).

Plaintiff relies on *In re Veal*, 450 B.R. 897 (Bankr. C.D. Cal. 2008), for the proposition that the Commercial Code applies to promissory notes and mortgages. Mot. to Cancel Assignment at 9. As the court in *Debrunner v. Deutsche Bank National Trust Co.*, a case analogous to the present matter, noted, Plaintiff's reliance on that case is misguided. 204 Cal. App. 4th 433, 441-42 (2012). "The analysis of the court in *Veal* was directed at the question of whether Wells Fargo Bank had standing to seek relief from an automatic bankruptcy stay . . . *The parties had stipulated that the Uniform Commercial Code applied to [the Note]*, and the court proceeded on that assumption without questioning the soundness of the premise." *Id.* (emphasis added). In doing so, the court noted that this stipulation departed from statutes, specifically referencing California Civil Code section 2924 and cases in California. *Id.* at 442.

In *Debrunner*, the plaintiff argued that the defendants had no right to foreclose because the defendants did not have an ownership right to the original possessory note pursuant to the Commercial Code. *Id.* at 437. There was no "chain of assignment" to each defendant. *Id.* The court rejected the plaintiff's argument, stating that it was "not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 11

---

convinced that the cited sections of the Commercial Code (particularly 3301) displace the detailed, specific, and comprehensive set of legislative procedures the Legislature has established for nonjudicial foreclosures." *Id*. at 441.

    Other courts have come to the same conclusion. In *Spence v. Wells Fargo Bank, N.A.*, the plaintiff sought a declaration regarding whether or not the defendant had standing to enforce the promissory note. 2011 WL 1668320, at *2 (E.D. Cal. May 3, 2011). The plaintiff relied on the Commercial Code. *See id.* The court denied the plaintiff's claim, stating that "Plaintiff's invocation of the California Commercial Code is of no avail, as it has no application in the instant context." *Id*. In *Blanco v. American Home Mortgage Servicing, Inc.*, the plaintiff contended that the defendant could not collect monies from her because the promissory note was not properly endorsed or delivered pursuant to Commercial Code section 3301. 2010 WL 716311, at *2 (E.D. Cal. Feb. 26, 2010). The transfer of the note, the plaintiff argued, was invalid. *Id*. The court disagreed and held that the Commercial Code did not apply in that context. *See id*.

    Similar reasoning applies in the present case. Plaintiff alleges that Defendants failed to properly endorse and deliver the Note to each successive defendant. FAC ¶ 29. Therefore, Plaintiff contends, there is no "chain of assignment" and the assignment of the note is invalid. *See* Mot. to Cancel Assignment of the Deed at 10. Plaintiff's argument relies on the Commercial Code. *See, e.g.*, FAC ¶ 29. Under *Debrunner, Spence*, and *Blanco*, the Commercial Code does not apply in this context. California Civil Code section 2924 is the relevant provision. Plaintiff has presented no argument that the assignment of the Note or DOT is improper under the California Civil Code. Plaintiff's allegation that the Note was improperly endorsed and delivered to each successive defendant fails to support her claim for Declaratory Relief.

### ii. MERS Signatory

    Plaintiff alleges that the September 20, 2011, assignment of her deed of trust is void because the MERS signatory, Kathy Oriard, was not an employee of MERS, but rather was an employee of BoA. FAC ¶ 24. Plaintiff's only evidence for this allegation is the Assignment of Plaintiff's DOT in which Oriard is the MERS signatory and is listed as an Assistant Secretary of MERS (FAC, Ex. K), and a series of assignments unrelated to Plaintiff's property in which Oriard is listed as the preparer of the document. FAC, Exs. I-J; L-P.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 12

---

Plaintiff appears to have misread the documents in Exhibits I, J, and L-P. Plaintiff contends that they illustrate that Oriard is an employee of BoA. The documents read: "Recording Requested By: Bank of America." In a separate section, they continue: "Prepared by: Kathy Oriard." On its face, this would indicate that Oriard is an employee of the company that prepared the documents, MERS, rather than an employee of the company that requested the documents, BoA. This reading is bolstered by Oriard's listed address, 450 E. Boundary St., Chapin, SC 29036, which matches the address of CoreLogic, an entity which collects the recorded documents. *See, e.g.*, FAC at Ex. L. While the Court will view the facts in the light most favorable to Plaintiff, Plaintiff's allegations must be facially plausible. *See Iqbal*, 556 U.S. at 679. Without more, Plaintiff's bare assertion that Oriard is an employee of BoA will not survive a motion to dismiss.

Even if the Court accepts Plaintiff's allegation that Oriard is an employee of BoA, it is insufficient to establish the existence of an "actual controversy." Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under section 2924(b)(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."

In *Chua v. IB Property Holdings, LLC*, the plaintiffs argued that the assignment of their deed of trust was invalid because the MERS signatory was an employee of CitiMortgage, the beneficiary. 2011 WL 3322884, at *1 (C.D. Cal. 2011). In the assignment of the plaintiffs' deed of trust, the signatory was listed as an Assistant Vice President of MERS, but on other documents, she was listed as Assistant Vice-President of CitiMortgage. *Id.* at *2. The court rejected the plaintiffs' argument. *Id.*; *see also Bogosian v. CR Title Services, Inc.*, 2011 WL 2039368 (N.D. Cal. May 18, 2011) (denying a TRO where Plaintiffs argued that the assignment was invalid due to signatory signing on behalf of MERS and CitiMortgage); *Silving v. Wells Fargo Bank, N.A.*, 2012 WL 135989 (D. Ariz. Jan. 18, 2012) (holding that an allegation that the signatory was an employee of both the beneficiary and MERS was insufficient to establish the invalidity of the assignment, and that the plaintiffs did not have standing to challenge the assignment of their deed because it did not change the plaintiffs' obligations). As in those cases, here Plaintiff has "not identified a relevant legal authority prohibiting one individual from

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 13

---

working for both [a bank] and MERS or from acting as an agent for both." *Chua*, 2011
WL 3322884, at *1; *see also Thomas v. Bank of America, N.A.*, 2013 WL 2371249, at *4
(Cal. Ct. App. May 31, 2013).

Accordingly, this allegation does not support Plaintiff's claim for Declaratory
Relief.

### iii. Securitization of Plaintiff's Loan

Plaintiff alleges that Defendants attempted to securitize her loan but failed to meet
the Pooling and Servicing Agreement ("PSA") requirements. *See, e.g.*, FAC ¶ 86(b).
Specifically, Plaintiff alleges that Defendants failed to assign Plaintiff's loan to the
CWALT Trust before the March 1, 2007, PSA deadline. *Id.* Plaintiff contends that she is
not challenging Defendants' authority to foreclose, but rather the improper collection of
mortgage payments by "third-party strangers to the underlying debt obligation." *Id.* ¶ 19.

Plaintiff's recharacterization of the situation is unsuccessful. *Junger v. Bank of
America, N.A.*, is persuasive given its many factual similarities. 2012 WL 603262 (C.D.
Cal. Feb 24, 2012). In *Junger*:

> Plaintiff alleges that shortly after the origination of his loan, AWL
> sold his loan to "another entity or entities" to be identified "through
> discovery." Plaintiff avers that these "unknown entities" and
> defendants were involved in "an attempt to securitize" his loan into
> a mortgage pool by transferring the note and deed of trust to U.S.
> Bank as trustee of the Lehman XS Trust. According to plaintiff,
> defendants failed to adhere to the January 31, 2006, deadline for
> transferring the note as required by the pool servicing agreement
> ("PSA") that governed the securitization of the note. Plaintiff alleges
> that this "fatal defect" renders defendants as "third-party strangers"
> to the underlying debt obligation without power or right to demand
> payment, declare default, negotiate his loan, or foreclose on his
> property. Plaintiff does not dispute "that a debt obligation exists,"
> but rather bases his claims on the allegation that defendants have no
> security interest in the debt obligation such that they cannot enforce
> the debt obligation by collecting payment and "seeks the Court's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 14

---

assistance in determining who the true creditor is of his Note and
Deed of Trust."

*Id.* at *1 (citations omitted).

Like Plaintiff here, Junger contended that he was not challenging the securitization
of the loan. *Id.* at *3. The court held that Junger lacked standing to challenge the process
by which his mortgage was securitized because he was not a party to the PSA. *Id.*; *see
also U.S. v. FMC Corp.*, 531 F.3d 813, 820 (9th Cir. 2008) (holding that a contract is not
enforceable by incidental beneficiaries who are not parties to the contract); *Bascos v.
Federal Home Loan Mortg. Corp.*, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011)
("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac
failed to comply with the terms of its securitization agreement, Plaintiff has no standing
to challenge the validity of the securitization of the loan as he is not an investor of the
loan trust."); *Deerinck v. Heritage Plaza Mortg., Inc.*, 2012 U.S. Distr. LEXIS 45728 at
*15 (E.D. Cal. Mar. 29, 2012) ("Plaintiffs' claim is based on a alleged breach of the
PSA—the securitization agreement—which governs the Countrywide Trust. However,
Plaintiffs lack standing to challenge the process in which their mortgage was securitized
because they are not a party to the PSA."). In doing so, the court rejected Junger's claims
for declaratory relief, negligence, and violation of Cal. Bus. and Prof. Code § 17200, all
of which were based on the defendant's failure to meet the PSA assignment deadline.

In the present case, Plaintiff challenges the proper securitization of her loan and,
as in *Junger*, argues that Defendants are third-party strangers to the loan. Plaintiff does
not have standing to make such a challenge. Therefore, this allegation does not support
Plaintiff's claim for Declaratory Relief.

### iv. BoA's Admissions in the Consent Orders

A consent order "is not enforceable directly or in collateral proceedings by those
who are not parties to it even though they were intended to be benefitted by it." *Blue
Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975). In the Ninth Circuit,
"*incidental* third-party beneficiaries may not enforce consent decrees, but *intended* third-
party beneficiaries may." *FMC Corp.*, 531 F.3d at 820 (emphasis in original). Absent a
clear intent to the contrary, individuals that benefit from a consent decree are generally

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 15

---

assumed to be incidental beneficiaries.[5] *See, e.g.*, *Jurewitz v. Bank of America, N.A.*, 2013 WL 1457739, at *2 (S.D. Cal. April 10, 2013); *FMC Corp.*, 531 F.3d at 821; *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999); *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009), *rev'd on other grounds by Astra USA, Inc. v. Santa Clara County, Cal.*, 131 S. Ct. 1342 (2011).

In general, the "intent hurdle is not satisfied by a contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind." *Astra USA, Inc.,* 588 F.3d at 1244. Rather, a court must look to the "precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries." *Id.*

In *Jurewitz*, the plaintiff relied on a consent decree between the defendant and Federal and State governments that prohibited the defendant from "dual-tracking" to establish claims arising out of the defendant's alleged unlawful foreclosure proceedings. 2013 WL 1457739, at *1. The court rejected the plaintiff's argument. *Id*. at *3. Even if the plaintiff could establish that the consent decree was entered with her in my mind, "the precise language of the Consent Judgment does not establish a clear intent to rebut the presumption that the third parties to the Consent Judgment are merely incidental beneficiaries." *Id*. (internal quotation marks omitted) (quoting *Astra USA, Inc.*, 588 F.3d at 1244).

In *FMC Corp.*, a case in which Native American tribes sought enforcement of a consent decree between the United States and a mining company, the court came to the same conclusion. 531 F.3d at 821. Though the tribes were involved in the consent decree negotiations, referenced several times in the consent decree, and given certain rights by the decree, the court deemed the tribes incidental beneficiaries unable to enforce the consent decree. *Id*. at 820-21. The court emphasized a provision in the consent decree disclaiming any intent to grant rights to third parties: "Nothing in this Consent Decree is

---

[5] *Jurewitz* refers to "government contracts," rather than consent decrees. *See* 2013 WL 1457739, at *2. However, "consent decrees are construed as contracts for purposes of enforcement." *United States v. FMC Corp.*, 531 F.3d 813, 819 (9th Cir. 2008) (quotation omitted); *see United States v. Asarco Inc.,* 430 F.3d 972, 980 (9th Cir. 2005) ("Without question courts treat consent decrees as contracts for enforcement purposes. A consent decree, like a contract, must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 16

---

intended either to create any rights in or grant any cause of action to any person not a party to this Consent Decree." *Id.* at 821. Other courts have interpreted similar wording the same way. *See, e.g.*, *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003) ("This agreement . . . [is] not intended to confer upon any person other than the parties any rights or remedies.").

In the present case, Plaintiff seeks to use the consent decree as the basis to collaterally estop Defendants from denying the decree's factual findings. Opp'n at 15-16. However, as in *FMC Corp.*, the consent decree contains a provision expressly disclaiming any intent to grant rights to third parties: "Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order." FAC, Ex. R, Art. XIII, ¶ 10. This provision, along with the presumption against third-party enforcement, makes clear that Plaintiff is only an incidental beneficiary to the consent decree. Accordingly, Plaintiff cannot use the consent decree to collaterally estop Defendants.

Plaintiff's proposed interpretation of the consent decree's factual findings is also unpersuasive. In the consent decree, the OCC's factual findings included BoA's use of fraudulent affidavits, improperly signed mortgage documents, and improperly endorsed and assigned promissory notes. *Id.* Art. I, ¶ 2(a)-(c). The OCC's findings were explicitly limited to "certain foreclosures of loans in [BoA's] residential mortgage servicing portfolio." *Id.* Plaintiff fails to allege any facts plausibly indicating that her loan was one of the loans referenced by the OCC. Despite Plaintiff's contention, the OCC's findings do not give rise to a plausible inference that subsequent actions were also improper. *See Manzarek*, 519 F.3d at 1031; *Twombly* 550 U.S. at 555 (emphasizing that the plaintiff's *well-pleaded* factual allegations are presumed to be true).

For these reasons, this allegation does not support Plaintiff's claim for Declaratory Relief.

### v. Annual Report

BoA's Annual Report reads, in relevant part: "In a number of cases, we do not hold, and may not be able to obtain, the underlying security, loan or other obligation. This could cause us to forfeit the payments due to us under these contracts." FAC, Ex. Q

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                Date: August 27, 2013
                                                                        Page 17

---

at 105. In her First Amended Complaint (¶ 26) and Opposition (at 16), Plaintiff quotes
this provision without the crucial first clause ("In a number of cases") and contends that
BoA admits to not holding Plaintiff's underlying security. Plaintiff has not alleged a
single fact indicating that BoA did not hold *Plaintiff's* underlying security. Without this
nexus, Plaintiff's allegation does not support her claim for Declaratory Relief.

       None of Plaintiff's five allegations support her claim for Declaratory Relief.
Plaintiff has insufficiently pled facts indicating an "actual controversy" exists. Therefore,
Plaintiff's claim for Declaratory Relief is DISMISSED.

## 2. Negligence

       To successfully plead a negligence claim, a plaintiff must allege duty, breach,
causation, and damages. *Truong v. Nguyen*, 156 Cal. App.4th 865, 875 (2007). "As a
general rule, a financial institution owes no duty of care to a borrower when the
institution's involvement in the loan transaction does not exceed the scope of its
conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*,
231 Cal. App.3d 1089, 1096 (1991).

       *Deerinck* is persuasive. In that case, the plaintiffs brought several claims against
the defendant banks based on their failure to properly securitize her loan. The plaintiffs
asserted that the defendants were, therefore, not authorized to collect on her loan. The
court rejected the plaintiff's negligence claim, holding that:

              Plaintiffs have not alleged that either of these Defendants assumed a
              duty or entered into a special relationship besides what one would
              expect from an arm's length mortgage transaction. Plaintiffs do not
              allege that their relationship with Bank of New York and Bank of
              America went beyond that of borrower, beneficiary, and loan
              servicer. Plaintiffs do not cite to any common law or statutory
              authority that gives rise to a duty of care. Instead, Plaintiffs allege
              that Bank of New York and Bank of America owed a unique duty
              to *not* take actions against Plaintiffs which Bank of New
              York and Bank of America did not have legal authority to take. This
              bare allegation fails to amount to the active participation required to
              establish a duty of care under *Nymark*.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                     Date: August 27, 2013
                                                       Page 18

---

*Deerinck*, 2012 U.S. Dist. LEXIS 45728 at *20 (emphasis in original).

     Here, Plaintiff similarly fails to plead the existence of a duty. Plaintiff alleges that Defendants "have a duty to exercise reasonable care and skill to follow California and Federal law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiff that they did not have legal authority to do." FAC ¶ 70. These are the same unsuccessful allegations made in *Deerinck*. They are equally unsuccessful here.

     Even if Plaintiff successfully plead that Defendants owed her a duty, Plaintiff has not shown a breach of that duty. Plaintiff asserts that Defendants breached the duty "when they failed to follow required and mandatory procedures for the assignment of the [loan]." *Id*. ¶ 72. The "procedures" Plaintiff refers to are the assignment deadline of the PSA and the endorsement and delivery requirements of the Commercial Code that Defendants allegedly violated through the unauthorized signature of Oriard and the unlawful practices that BoA admitted to in the consent decrees and their Annual Report. These allegations have been analyzed in Sections III.1.i–v and deemed insufficient. Accordingly, Plaintiff has not shown a breach of duty. Therefore, Plaintiff's Negligence claim against Defendants is DISMISSED.

### 3. Unfair Debt Collection

     The purpose of the Fair Debt Collection Practices Act ("FDCPA") is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To accomplish this goal, the FDCPA prohibits debt collectors from "using any false, deceptive or misleading representation or means in connection with the collection of a debt." 15 U.S.C. § 1692e. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt collector" does not include an individual who collects or attempts to collect a debt "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 19

---

person." 15 U.S.C. § 1692a(6)(F). Under this exception, "creditors, mortgagors and mortgage servicing companies are not 'debt collectors' and are exempt from liability under the [FDCPA]." *Caballero v. Ocwen Loan Servicing,* 2009 WL 1528128, at *1 (N.D. Cal. May 29, 2009). The act of foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA. *See Makreas v. First Nat. Bank of Northern* California, 856 F. Supp. 2d 1097, 1102 (N.D. Cal. 2012); *Castaneda v. Saxon Mortg. Services, Inc.*, 687 F. Supp. 2d 1191, 1197 (E.D. Cal. 2009).[6]

Plaintiff alleges that Defendants' attempts to collect Plaintiff's debt are unlawful because they have not been assigned any interest in the debt. *See* FAC ¶ 81.To support this claim, Plaintiff alleges that Defendants "knew or should have known" that: 1) BoA admitted to not holding Plaintiff's underlying security in its Annual Report; 2) Defendants failed to meet the assignment deadline of the PSA; 3) Oriard was not a MERS employee and thus was not authorized to sign the assignment of the DOT; and 4) BoA admitted to conducting improper foreclosure procedures in its consent decrees with the OCC and the Board of Governors of the Federal Reserve System. *Id.* ¶ 86.

These allegations have been analyzed in Sections III.1.i–v and deemed insufficient. Accordingly, Plaintiff has failed to allege any plausible facts indicating false, deceptive or misleading representations in connection with the collection of a debt. Therefore, Plaintiff's Unfair Debt Collection claim is DISMISSED.[7]

---

[6] *See also Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); *Ines v. Countrywide Home Loans, Inc.*, No. 08cv1267 WQH (NLS), 2008 WL 4791863, at *2 (S.D. Cal. Nov. 3, 2008). *see also Rosal,* 2009 WL 2136777, at *18 (dismissing RFDCPA claim as to all defendants in foreclosure case); *Ricon v. Recontrust Co.,* No. 09-937, 2009 WL 2407396, at *4 (S.D.Cal. Aug. 4, 2009) (dismissing with prejudice plaintiff's unfair debt collection claims in foreclosure case); *Pittman v. Barclays Capital Real Estate, Inc.,* No. 09-0241, 2009 WL 1108889, at *3 (S.D.Cal. Apr. 24, 2009) (dismissing with prejudice plaintiff's Rosenthal Act claim in foreclosure case because a "residential mortgage loan does not qualify as a 'debt' under the statute"); *Gallegos v. Recontrust Co.*, No. 08-2245, 2009 WL 215406, at *3 (S.D.Cal. Jan. 28, 2009) (dismissing RFDCPA claim in foreclosure case).

[7] Any further motion practice in this case must address BoA's classification as a debt collector under the FDCPA. Specifically, parties must address the discrepancy between BoA's July 2011, letter to Plaintiff in which BoA informed Plaintiff that it is a debt collector under the FDCPA, and 15 U.S.C. § 1692a(6)(F), which establishes that a debt collector does not include an individual who collects or attempts to collect a debt that was not in default at the time it was obtained by such person. RTC filed a Notice of Default in November 2012. Under 15 U.S.C. § 1692a(6)(F), then, BoA was not a debt collector under the FDCPA in July 2011.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 20

---

### 4. Unfair Business Practices

California Business and Professions Code section 17200, California's Unfair
Competition Law ("UCL"), prohibits any unlawful, unfair, or fraudulent business
practice. An "unlawful business practice" within the meaning of the UCL is an act or
practice, committed pursuant to business activity, that is at the same time forbidden by
law. *Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930, 937 (N.D. Cal. 2011). An
"unfair business practice" under the UCL is one that either offends an established public
policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to
consumers. *Id*. at 940. A claim under the fraudulent conduct prong is based on the
reasonable consumer standard, which requires the plaintiff to show that members of the
public are likely to be deceived. *Id*. at 941.

Plaintiff contends that Defendants violated each of the three UCL prongs. Under
the "unlawful" prong, Plaintiff claims that Defendants violated the FDCPA, California
Penal Code section 532f(a)(4)[8], and California Civil Code section 1095.[9] Plaintiff
supports this claim by referencing her allegations in her Unfair Debt Collection claim.
Specifically, Plaintiff alleges that Defendants demanded and accepted payments for debts
that were non-existent (FAC ¶ 106), reported late payments to credit bureaus without
authority to do so (FAC ¶ 112), acted as beneficiaries without authority to do so (FAC ¶
111), facilitated the unlawful enforcement of Plaintiff's Note and Mortgage and engaged
in illegal debt collection activities (FAC ¶ 114), and misled Plaintiff into believing that
Defendants had the authority to demand payments (FAC ¶ 115). These allegations are
predicated on the creation and maintenance of fraudulent documents and improper
assignment procedures. These allegations have been analyzed in Sections III.1.i–v and
Section III.4.

---

[8] Section 532f(a)(4) states, in relevant part: "A person commits mortgage fraud if, with the intent to
defraud, the person . . . [f]iles or causes to be filed with the recorder of any county in connection with a
mortgage loan transaction any document the person knows to contain a deliberate misstatement,
misrepresentation, or omission."
[9] Section 2095 states, in relevant part: "When an attorney in fact executes an instrument transferring an
estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in
fact."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 21

---

Furthermore, Plaintiff does not provide any facts explaining how Defendants allegedly violated California Civil Code section 1095. Perhaps realizing this, Plaintiff only argues that Defendants violated the FDCPA in her Opposition. *See* Opp'n at 24. Because of these deficiencies, Plaintiff's UCL claim fails under the "unlawful" prong.

Plaintiff does not articulate specific facts under the "unfair" prong, but rather references the allegations in the "unlawful" prong. In short, Defendants' unfair practices amount to collecting Plaintiff's payment without the right to do so. Opp'n at 24. Like Plaintiff's allegation under the "unlawful" prong, this allegation is predicated on the creation and maintenance of fraudulent documents and improper assignment procedures. Plaintiff refers back to the improperly endorsed Note and Assignment, and the missed assignment deadline under the PSA. Plaintiff further relies on the admissions made in BoA's Annual Report and consent decrees. These allegations have been fully addressed in Sections III.1.i–v. Accordingly, Plaintiff has failed to identify an immoral, unethical, oppressive, unscrupulous, or substantially injurious practice or an established public policy. Therefore, Plaintiff's UCL claim fails under the "unfair" prong.

As under the "unfair" prong, Plaintiff does not allege specific facts under the "fraudulent" prong. Plaintiff merely claims that "Defendant's acts and practices are likely to deceive members of the public." FAC ¶ 116. Such a conclusory allegation does not suffice on a motion to dismiss. Though Plaintiff claims in her Opposition that "collecting on a debt [that Defendants] have no right to . . . is extremely likely to deceive . . . the public," this allegation is both conclusory and predicated on insufficient facts. Sections III.1.i–v make clear that Plaintiff's claims based on the PSA deadline, unauthorized endorsements, improper delivery procedures, and BoA's admissions in the Annual Report and consent decrees must fail. Plaintiff's argument under the "fraudulent" prong relies on the same allegations of fraudulent documents and improper procedures. For the same reasons outlined in Sections III.1.i–v, Plaintiff's UCL claim fails under the "fraudulent" prong.

Because Plaintiff fails to allege sufficient facts under the unlawful, unfair, and fraudulent prongs of the UCL, Plaintiff's UCL claim is DISMISSED.

**5. Cancellation of Written Instrument**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 22

———————————————————————————————————————————

     The Court may order cancellation of an invalid written instrument that is void or voidable. Cal. Civ. Code § 3412. "A complainant is required to do equity by restoring to the defendant any value the plaintiff received from the transaction. The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Kimball v. Flagstar Bank, F.S.B.*, 881 F. Supp.2d 1209, 1225 (quoting *Fleming v. Kagan,* 189 Cal. App. 2d 791, 796 (1961)).

     Plaintiff contends that improper procedures and fraud render the assignment of the DOT invalid. FAC ¶ 131. The procedures and misconduct that Plaintiff refers to are the improper endorsement and delivery of the DOT in violation of the Commercial Code, the missed assignment deadline under the PSA, the unauthorized signature of Oriard, and the various forms of unlawful behavior that BoA admitted to in the consent decrees and their Annual Report. These allegations have been analyzed in Sections III.1.i–v and deemed insufficient. Accordingly, Plaintiff has not shown that the assignment of the DOT is invalid. Therefore, Plaintiff's claim for the cancellation of a written instrucment is DISMISSED.[10]

### 6. Quiet Title

     Plaintiff "does not make any [Quiet Title] claim against the defendants and therefore the defendants are not named as a defendant in the sixth cause of action." Opp'n at 26. The Court has dismissed all un-served "Does" in this matter. Order Re: Scheduling Conference Deadlines and Hearing Dates (Dkt. 15). Therefore, no valid Quiet Title claim remains.

     Plaintiff's Quiet Title claim is DISMISSED WITH PREJUDICE.

### IV.    Disposition

     For the foregoing reasons, the Court GRANTS Defendant's Motion and DISMISSES WITHOUT PREJUDICE Plaintiff's first five causes of action. Plaintiff's Quiet Title claim is DISMISSED WITH PREJUDICE. The Court DENIES Plaintiff's Motion to Cancel the Assignment of the Deed of Trust.

———————————————————————————————————————————

[10] The Court's reasoning applies equally to Plaintiff's Motion to Cancel the Assignment of the Deed. Therefore, the Court DENIES Plaintiff's Motion to Cancel the Assignment of the Deed.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 12-01691-DOC (MLGx)                    Date: August 27, 2013
                                                      Page 23

Plaintiff may file an Amended Complaint, if at all, on or before September 16, 2013.


The Clerk shall serve a copy of this minute order on counsel for all parties in this action.


MINUTES FORM 11
CIVIL-GEN                                    Initials of Deputy Clerk: jcb